

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

June 7, 2024

<u>**BY EMAIL AND ECF**</u>

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Jeffrey Crossland, 19 Cr. 645 (KMK)*

Dear Judge Karas:

      The Government respectfully submits this letter in the above-captioned matter in response to defendant Jeffrey Crossland's motion for a reduction in his sentence to 41 months' imprisonment pursuant to 18 U.S.C. § 3582(c)(2), on the grounds that he has made productive use of his time in prison, a conscientious effort to rehabilitate himself, and is a low risk of recidivating. Dkt. No. 147. Crossland's motion seeks a sentence reduction through the retroactive application of United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Amendment 821, which took effect on November 1, 2023. Here, the motion rests on the following portion of Amendment 821:

- Part B, Subpart 1, which creates a new provision, Section 4C1.1, which provides a two-level downward adjustment in offense level for certain offenders who present zero criminal history points and are not subject to any of the ten exclusionary criteria listed in the new U.S.S.G. § 4C1.1.

A defendant is generally eligible for potential relief if, as a result of Amendment 821, the defendant's amended Guidelines range is lower than the range that applied at the defendant's original sentencing, *and if* the defendant did not already receive a sentence lower than the amended range on any ground other than substantial assistance.

      For the reasons set forth below, Crossland's motion should be denied.

## I.    BACKGROUND

      Crossland and two co-defendants, Raymond Robinson and Stephen Parente, were charged in a one count indictment with participating in a conspiracy to commit wire fraud by defrauding four churches, a pastor, and principals of a real estate development company out of over $3,650,000, in violation of 18 U.S.C. § 1349 (the "Indictment"). On September 17, 2021, Crossland pled guilty, pursuant to a plea agreement, to the Indictment. The parties stipulated to a

Guidelines range of 51 to 63 months' imprisonment, based on an offense level of 24 and a criminal history category of I. On May 4, 2022, the Court sentenced Crossland to a term of 51 months' imprisonment.

On November 1, 2023, a new version of the Guidelines took effect.  Amendment 821 to the Guidelines contained certain changes that were applicable retroactively for purposes of resentencing pursuant to 18 U.S.C. § 3582(c)(2).

## II.    CROSSLAND DOES NOT QUALIFY FOR A REDUCTION

Section 3582(c)(2), which governs Crossland's motion, "establishes a two-step inquiry.  A court must first determine that a reduction is consistent with Section 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010).  Under application note 1(A) to Section 1B1.10: "Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance)."

Crossland does not qualify for relief under Amendment 821.  Under Section 4C1.1, the two-level reduction in offense level applies if the defendant is not subject to any of the ten exclusionary criteria, listed in the new U.S.S.G. § 4C1.1.  One of those criteria is that the defendant "did not personally cause substantial financial hardship." *See* U.S.S.G. § 4C1.1(a)(6).  Because Crossland did personally cause substantial financial hardship, he does not qualify for relief.

On December 7, 2023, the Probation Office issued a Supplemental Presentence Investigation Report ("Supp. PSR" or "Supplemental PSR") in which it took the position that Crossland qualified for relief under Amendment 821 on the basis that Crossland met the criteria for relief under U.S.S.G. § 4C1.1(a)(6) because, among other things, he did not personally cause substantial financial hardship to victims.  Supp. PSR, p. 2.  The Government reviewed Section 4C1.1 and spoke with the Probation Office.  Its view appeared to be influenced by the fact that neither Crossland's plea agreement nor his original PSR Guidelines calculation included an enhancement for causing substantial financial hardship to victims pursuant to U.S.S.G. § 2B1.1(b)(2).  The Government pointed out that application note 1 of Section 4C1.1 states that the "application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of § 2B1.1," and informed the Probation Office that the victims here suffered substantial financial hardship that the Government described in detail in its letter to the Court in anticipation of Crossland's sentencing ("Sentencing Letter").  Dkt. No. 127.  The Government requested that the Probation Office reconsider its view in light of this information.  The Probation Office requested that the Government provide its Sentencing Letter, which it did, and the Probation Office reviewed its determination.  On May 10, 2024, the Probation Office issued a Revised Supplemental Presentence Report ("Rev. Supp. PSR"), in which it explained that after reviewing the Government's Sentencing Letter and the guidance provided in application note 1 of U.S.S.G. § 4C1.1, "it appears that the defendant caused substantial financial hardship to multiple victims.  As

such, this revised supplemental presentence report reflects this modification and the defendant no longer qualifies for a reduction." Rev. Supp. PSR, p.2., f.n. 2.

Crossland does not qualify for relief under Amendment 821 because he personally caused substantial financial hardship to four churches, a pastor, and the principals of a real estate development company. The Government's Sentencing Letter, the victim impact statements submitted to the Court at the time of Crossland's sentencing, and the pastors who spoke at Crossland's sentencing all described the substantial financial hardships Crossland's criminal behavior caused, including, congregations that could not expand their churches or renovate their churches and, in one case, a congregation that could not rebuild its entire building, which had been destroyed by fire. Tr. 5-12.[1] Crossland himself acknowledged the substantial financial impact of his crime on the church congregants, stating that "[t]hey put up money they couldn't afford to lose in a lot of cases. They too were looking forward to brand new facilities, child-care facilities, sanctuary expansions. They would have been proud for that to be part of their community. That didn't happen. I failed them miserably." Tr. 27. Finally, Your Honor found that, among the reasons why Crossland's criminal conduct was so serious was because "more than three and a half million dollars was lost by religious communities that can least afford to lose three and a half million dollars. This was really serious and it required a great deal of planning and heartlessness, to be honest." Tr. 36-37. As the Court further found, "[p]eople should understand that financial loss – victims of financial loss, they get hurt badly, and I think it's relevant here, in particular, who the victims were." Tr. 37. Given the undisputed fact that Crossland caused substantial financial hardship to these churches (as well as the real estate developers and pastor who gave Crossland his own money), he does not qualify for a reduction in his sentence.

Even if Crossland did qualify, the Court should deny the motion. Where a defendant qualifies, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.10 app. note 1(B)(i); *see also* U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). The Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018).

Accordingly, courts in this district have denied sentence reductions under Amendment 821 when the Section 3553(a) factors still supported the original sentence imposed. *See, e.g.*, *United States v. Calk*, No. 19 Cr. 366 (LGS), Dkt. No. 318, at *2-3 (S.D.N.Y. Mar. 4, 2024) ("For the reasons expressed at Defendant's initial sentencing hearing, the previously imposed sentence is the minimum sentence necessary" to meet 18 U.S.C. § 3553(a)(2)(A)-(B))*; United States v. Crute*, No. 19 Cr. 816 (VB), Dkt. No. 78, at *2 (S.D.N.Y. Feb. 20, 2024) ("To reduce Crute's term of

---

[1] A copy of the May 4, 2022 transcript of Crossland's sentencing and three recently provided victim impact statements are being submitted to the Court and counsel with this letter.

imprisonment now, simply because his criminal history category no longer takes into account the fact that he was on supervised release at the time of the offense, would surely promote disrespect for the law and would also disrespect the views of Crute's victims. This is not a step the Court is willing to take."); *United States v. Khaziran*, No. 21 Cr. 603 (VEC), Dkt. No. 1247, at 3 (S.D.N.Y. Jan. 17, 2024) ("Defendant urges the Court to reduce his sentence by six months primarily because he has been a 'model inmate,' promptly took responsibility for his actions, has strong family connections, and is unlikely to reoffend. The Court commends Defendant for his good behavior and employment while incarcerated. Those factors are not enough, however, to justify a reduction of sentence in this case." (citations omitted)).[2]

Here, considering all the facts and circumstances, and notwithstanding Crossland's claims that he used his time in prison productively, has made a conscientious effort to rehabilitate himself, and has a low risk of recidivating, the Court should deny his motion. A two-level downward adjustment in Crossland's offense level would place him at an offense level of 22, with a modified Guidelines range of 41-51 months' imprisonment. Supp. PSR, p. 3. Crossland's scheme was extensive and caused substantial harm, which, in addition to causing permanent financial hardship, also caused deep emotional harm that was passionately described by the victims at the time of Crossland's sentencing. Moreover, the impact of Crossland's crime continues to affect victims. In a recent victim impact letter, one pastor wrote that "we are still dealing with the pain and effects of Jeffrey Crossland's lies and deception to rob us of hundreds of thousands of dollars that the hard-working members of our church raised to build a still much needed sanctuary." In another letter, the pastor for the congregation that lost its church to fire wrote that the congregation "is still heavily impacted by the hardship [Crossland] has brought upon us both emotionally and financially." The congregation has not been able to rebuild its church, and, sadly, senior members of the church have passed away without seeing their new church built and the congregation has

---

[2] Many courts have likewise denied sentence reductions when previous Guideline amendments lowered the applicable sentencing ranges. *See, e.g.*, *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013) (denial of sentence reduction was not an abuse of discretion, although earlier sentence reduction had been granted despite defendant's prison misconduct, and defendant had not engaged in any new prison misconduct); *United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Stevenson*, 332 F. App'x 261, 262-63 (6th Cir. 2009) (reduction denied despite eligibility under amendment, based on disciplinary infractions in prison, and lengthy criminal record); *United States v. Dunn,* 728 F.3d 1151, 1160 (9th Cir. 2013) (reduction denied where, among other things, "the original sentence was needed to afford adequate deterrence" (internal quotation marks omitted)); *United States v. Arceneaux*, 297 F. App'x 819, 821 (10th Cir. 2008) (reduction denied due to disciplinary record in prison); *United States v. Suell*, No. 99 Cr. 324, 2008 WL 2845295, at *3 (N.D. Tex. July 17, 2008) (motion denied because defendant benefitted from a favorable plea agreement in which charges were dismissed and the sentence was reduced); *United States v. Reynolds*, No. 95 Cr. 71, 2008 WL 2367254, at *3 (S.D. W. Va. June 9, 2008) (motion denied because defendant's criminal conduct was "nothing short of egregious"), *aff'd*, 309 F. App'x 703 (4th Cir. 2009); *United States v. Melton*, No. 98 Cr. 50, 2008 WL 1787045, at *2 (W.D.N.C. Apr. 17, 2008) (denial based on nature of offense); *United States v. Craig*, No. 96 Cr. 105, 2008 WL 1775263, at *2 (W.D.N.C. Apr. 15, 2008) (denial based on the facts of the case).

watched as other new churches have gotten constructed in the area.  Both these victims specifically registered their opposition to a reduction in Crossland's sentence.  A third pastor described the continued impact of the financial losses his church has suffered, which amount to hundreds of thousands of dollars over the $300,000 the church gave to Crossland.  None of the church's money has been recovered.  Given the harm Crossland's conduct caused and continues to cause, and victims' opposition to a reduction in Crossland's sentence, a 51-month sentence is the right sentence, and no reduction should be granted.

Crossland's request for a reduction to 41 months also would not be appropriate given Crossland's degree of culpability relative to Robinson's. Your Honor originally imposed a 42-month sentence on Robinson.  At Crossland's sentencing, Your Honor found that Crossland had a "greater role" than Robinson and bore "a little bit more responsibility for this scheme." Tr. 40.  To reflect the differences in their roles in the offense, among other factors, Your Honor imposed the longer sentence of 51 months on Crossland, compared with the 42-month sentence imposed on Robinson.  Tr. 39.  In December 2023, Robinson filed a motion for reduction of his sentence pursuant to Amendment 821 and Your Honor granted his motion and reduced his sentence by one month, from 42 months to 41 months.[3]  Dkt. No. 146.  That slightly lower sentence for Robinson does not disturb the Court's original aim of imposing an aptly longer sentence on Crossland because of his greater culpability in the scheme.  Granting Crossland's motion to reduce his sentence so that it is the same as Robinson's, however, would thwart the Court's original intention and arguably would create an unwarranted sentencing disparity between the two co-conspirators. The Court should not grant Crossland's motion and should not reduce his sentence by any amount of time.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Margery B. Feinzig
Assistant United States Attorney
(914) 993-1903

cc:     Diane Fischer, Esq.  (By email and ECF)

---

[3] Robinson's amended Guidelines range was 41 to 51 months. Thus, the lowest amended sentence he could receive was 41 months. *See,* Robinson Motion for Reduction of Sentence. Dkt. No. 146. When Robinson filed his motion the Probation Office took the position that Robinson qualified for a reduction because he had not caused substantial financial hardship.  Dkt. No 143. The Government did not question that view and agreed with defense counsel not to oppose Robinson's motion.  We have since come to better understand the guidance contained in application note 1 of Section 4C1.1.